IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAIME MACKEY,

        Plaintiff,

                        6:13-cv-00698-PK

v.                                   FINDINGS AND
                                   RECOMMENDATION

CAROLYN W. COLVIN,
Commissioner of Social Security,

        Defendant.

PAPAK, Magistrate Judge:

        Plaintiff Jamie Mackey ("Mackey") seeks judicial review of the Commissioner of Social Security's final decision denying his applications for social security insurance ("SSI") and disability insurance benefits ("DIB") under Titles II and IX of the Social Security Act (the "Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) and 1383(c)(3). I have considered all of the parties' briefs and all of the evidence in the administrative record. For the

reasons set forth below, the Commissioner's final decision should be reversed and remanded for immediate payment of benefits.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 404.1520(a)(4)(i), 404.1520(b), 416.920(a)(4)(i), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ability to perform basic work

activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related, physical and mental activities on a regular and continuing basis, despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a); see also SSR 96-8p, 1996 WL 374184.

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that

the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof is, for the first time, on the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether the claimant can perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; see also 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets its burden to demonstrate that the claimant is capable of performing jobs existing in significant numbers in the national economy, the claimant is conclusively found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c), 404.1566, 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet its burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

## LEGAL STANDARD

A reviewing Court must affirm an Administrative Law Judge's decision if the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a

conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* The Court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

## BACKGROUND

Born in 1983, Mackey was 28 years old at the time of the hearing. Tr. 35, 145, 152.[1] He protectively filed for SSI and DIB on July 29, 2009, alleging disability as of June 1, 2006, due to epilepsy and anemia. Tr. 152, 192. After his applications were denied initially and on reconsideration, Mackey requested a hearing before an ALJ. Tr. 85-94, 98-106. Mackey appeared and testified before ALJ James Yellowtail on March 2, 2012. Tr. 31-62. Mackey was represented by an attorney at the hearing. *Id.* The ALJ also took testimony from vocational expert ("VE") Jay Stutts. *Id.*

At the hearing, Mackey testified that he left high school in his senior year prior to graduating and has not earned a GED. Tr. 35. He has past work experience as a fast-food worker, a landscape laborer, a hand-sander, and an amusement park worker. Tr. 53, 193. Mackey testified that he suffers from seizures day and night, and requires "[a]nywhere from two days to a week to recover." Tr. 40. In the three months prior to the hearing, Mackey had suffered from four grand mal seizures. Tr. 41. Mackey testified that he frequently forgot to take

his medications and, at times, could not afford his medications. Tr. 42-43. He was laid off from his job at McDonalds because of his seizures. Tr. 45. Mackey also testified to memory problems and stated that he had difficulty caring for his children. Tr. 48-49.

On March 22, 2012, ALJ Yellowtail issued a decision finding Mackey not disabled. Tr. 11-24. The Appeals Council denied Mackey's subsequent request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3; *see* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). Mackey now seeks judicial review of that decision.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the ALJ found that Mackey had not engaged in substantial gainful activity since his alleged onset date of June 1, 2006. Tr. 16. At the second step, the ALJ found that Mackey had the following severe impairments: seizure disorder, cognitive disorder, adjustment disorder with depressed mood, and history of polysubstance abuse. Tr. 17. Because Mackey's impairments were deemed severe, the ALJ properly proceeded to the third step of the analysis. *Id.*

At the third step, the ALJ found that none of Mackey's impairments met or equaled any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 17. The ALJ therefore conducted an assessment of Mackey's RFC. Tr. 18. The ALJ found that during the relevant adjudication period Mackey could perform a full range of work at all exertional levels, with the following limitations: he may frequently balance, stoop, kneel, crouch, crawl and climb stairs or ramps, and should perform no more than occasional climbing of ladders or scaffolds; he should not be exposed to workplace hazards such as unprotected heights or moving machinery; he could

---

[1] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative

perform routine, repetitive work involving no more than simple instructions; he could occasionally interact with the general public. *Id.* At the fourth step of the five-step process, the ALJ found that Mackey had no past relevant work. Tr. 22. At step five, the ALJ determined that Mackey could perform jobs that exist in significant numbers in the national economy including auto detailer, hand packager, and basket filler. *Id.* Based on his step five findings, the ALJ concluded that Mackey was not disabled. Tr. 23-24.

## ANALYSIS

Mackey argues that the Commissioner erred because he (1) improperly evaluated the medical evidence; (2) failed to find his shoulder impairment to be severe at step two; (3) improperly rejected his subjective symptom testimony; and (4) improperly rejected the lay witness testimony.

### I. Medical Evidence

The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r*, 533 F.3d 1115, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of treating, examining, and non-examining physicians. The opinion of a treating physician is generally accorded greater weight than the opinion of an examining physician, and the opinion of an examining physician is accorded greater weight than the opinion of a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An uncontradicted treating physician's opinion can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). In contrast, if the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's

---

record filed herein as Docket No. 9.

opinion. *Lester*, 81 F3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). An ALJ may also discount a medical source's opinion that is inconsistent with the source's other findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). It is legal error to ignore an examining physician's medical opinion without providing reasons for doing so, and an ALJ effectively rejects an opinion where he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

### 1. Treating Neurologist Mia Schreiner

Mackey first argues that the ALJ improperly rejected the opinion of treating neurologist Mia Schreiner, M.D. Dr. Schreiner first examined Mackey at Roseberg Neurology Clinic in June, 2009. Tr. 478. She opined that Mackey was having complex partial seizures, "sometimes with secondary generalization." Tr. 480. In July, 2010, Dr. Schreiner wrote that Mackey's seizures were increasing in frequency and opined that Mackey's seizures could be occurring more often than reported because of his poor memory. Tr. 550. She also noted that Mackey's seizure medication, Tegretol, was not working well. *Id.* Dr. Schreiner concluded by noting, "[Mackey] is applying for disability right now, which is a good idea, as I don't think he could hold a job." *Id.* Later treatment notes reveal that Mackey continued to have seizures despite adjustments in his medications. Tr. 586-94. Mackey contends that the ALJ failed to address Dr. Schreiner's opinion. Pl.'s Br. 16.

The ALJ is required to explain why "significant, probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Here, Dr. Schreiner was Mackey's treating neurologist for two years. *See* Tr. 478-81, 548-63. Based on her treatment relationship

8 – FINDINGS AND RECOMMENDATION

with Mackey, and noting the frequency of Mackey's seizures and the fact that medication failed to manage his seizures, Dr. Schreiner concluded that Mackey could not hold a job. Tr. 550. This opinion is both significant and probative, and the ALJ was required to provide legally sufficient reasons for rejecting Dr. Schreiner's opinion. *Vincent*, 739 F.2d at 1394-95; *Baxter*, 923 F.2d at 1396.

The Commissioner argues that the ALJ was not required to consider Dr. Schreiner's opinion because it addressed Mackey's ability to hold a job, an area "reserved to the Commissioner." Def.'s Br. 11. However, the ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating physician's uncontroverted opinion, even if that opinion addresses the ultimate issue of disability. *Holohan v. Massanari*, 246 F.3d 1195, 1202-03 (9th Cir. 2001). Here, the ALJ failed to provide clear and convincing reasons sufficient for rejecting Dr. Schreiner's opinion; the ALJ merely noted that the non-examining physicians' opinions contradicted Dr. Schreiner's opinion because they suggested Mackey was capable of a level of functioning that could sustain gainful employment. *See* Def.'s Br. 11. The Ninth Circuit has stated that the opinion of a non-examining physician "cannot by itself constitute substantial evidence that justifies the rejection of the opinion of ... a treating physician." *See Lester*, 81 F.3d at 831. The opinions cited by the ALJ in justifying his rejection of Dr. Schreiner's opinion were from consultative Agency physicians and, without more, did not constitute substantial evidence. *Id.* On this record, the ALJ's rejection of Dr. Schreiner's statement was error. *Holohan*, 246 F.3d at 1202-03.

2. Examining Psychologist Judith Eckstein

Mackey argues, second, that the ALJ improperly rejected the opinion of examining psychologist Judith Eckstein, Ph.D. Pl.'s Br. 16. Dr. Eckstein examined Mackey and opined

9 – FINDINGS AND RECOMMENDATION

that he has "abnormally low processing speed." Tr. 538. Dr. Eckstein wrote that Mackey's difficulty with cognitive processing put him at risk for not being able to complete tasks in a timely manner. She also opined that Mackey would be most successful if allowed to work at his own pace. Tr. 538-39.

The ALJ considered Dr. Eckstein's opinion and found that Mackey was able to perform routine, repetitive, simple, unskilled work. Tr. 18. In *Stubbs-Danielson v. Astrue*, the Ninth Circuit held that the ALJ's limitation of the claimant to simple tasks adequately captured her limitations in concentration, persistence and pace because medical evidence in the record also stated that claimant was able to "carry out simple tasks." *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008). In so doing, the Ninth Circuit stated that the ALJ properly translated the claimant's condition, "including the pace and mental limitations, into the only concrete restrictions available to him." *Id.* at 1174. *Stubbs-Danielson* is apposite here, because the RFC limited Mackey to performing only simple tasks. The ALJ's rejection of Dr. Eckstein's opinion was therefore not error, because the RFC sufficiently captured Mackey's cognitive limitations as assessed by Dr. Eckstein.

## II. Credibility

Mackey next argues that the ALJ erred by rejecting his subjective symptom testimony. In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. 20 C.F.R. § 404.1529. First, the ALJ determines whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of symptoms. *Smolen*, 80 F.3d at 1282. If such evidence exists, and barring affirmative evidence of malingering, the ALJ must give clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the

10 – FINDINGS AND RECOMMENDATION

symptoms. *Id.* at 1284; *see also Lingenfelter*, 504 F.3d at 1036. If the record contains affirmative evidence of malingering, the ALJ need only provide specific and legitimate reasons for an adverse credibility finding. *Morgan v. Comm'r*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ may consider many factors in weighing a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. *Tommasetti*, 533 F.3d at 1039. Where the ALJ's credibility findings are supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, a general assertion that plaintiff is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Morgan*, 169 F.3d at 599.

Mackey testified to disabling limitations caused by his seizure disorder and cognitive and memory problems. The ALJ rejected Mackey's testimony for several reasons. Tr. 18-22. First, the ALJ noted that the medical evidence did not corroborate Mackey's testimony regarding his musculoskeletal injuries. Tr. 20, *citing* Tr. 583, 587, 590, 593, 600, 603 (treatment records revealing normal muscle strength, normal muscle tone, normal reflexes, and normal range of motion). Mackey alleged back, neck, and left shoulder pain and limitations consistently throughout the medical record. *See* Tr. 226, 304, 537, 583, 602. In 2008, Charles McCart, M.D. opined that Mackey had "significant tenderness" in his left shoulder, but no range of motion limitations secondary to shoulder pain. Tr. 487. An MRI in 2010 revealed severe post-traumatic

11 – FINDINGS AND RECOMMENDATION

deformity of Mackey's left glenohumeral joint, with joint effusion. Tr. 571. This record provides objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of Mackey's symptoms. *Smolen*, 80 F.3d at 1282. It therefore does not provide, by itself, a clear and convincing reason for rejecting Mackey's testimony regarding his musculoskeletal pain and limitations. *See id.*

Second, the ALJ noted that Mackey had a history of noncompliance with prescribed anti-seizure medication. Tr. 20-21. However, Mackey provided compelling reasons for his noncompliance that are supported by the record. For example, Mackey cited poor memory as one cause of his noncompliance with treatment. Tr. 42-43 (testimony from Mackey that he often forgot his medications). In August, 2011, Dr. Schreiner noted that Mackey had problems understanding his medication dosage. Tr. 587. Dr. Eckstein opined that Mackey has "abnormally low processing speed" comparable with mild mental retardation, and an IQ score in the low average range of intellectual functioning. Tr. 538. Mackey's cognitive issues, corroborated by the medical record, explain his record of failure to consistently comply with treatment. On this record, noncompliance with prescribed anti-seizure medication was not a clear and convincing reason for finding Mackey not credible.

Third, the ALJ found that Mackey's reports of side effects were not supported by his treatment records. Tr. 21. The record, however, contains documentation of side effects including sleepiness, fatigue, dizziness, diplopia, and gum atrophy. *See* Tr. 234, 550, 555, 556, 558. The Court thus rejects the ALJ's third reason for rejecting Mackey's testimony.

Fourth, the ALJ found that Mackey made inconsistent statements. Tr. 21. The ALJ may consider ordinary techniques of credibility evaluation in weighing a claimant's credibility. *Tommasetti*, 533 F.3d at 1039. The ALJ found that Mackey made inconsistent statements about

12 – FINDINGS AND RECOMMENDATION

his use of substances; specifically, that he appeared to "underreport his use of" substances. Tr. 21. The record, however, contains no indication of substance problems following an incident in June, 2006 when Mackey was hospitalized for acute intoxication. Tr. 358-59. Because the Commissioner presents no clear contradictions in Mackey's testimony regarding his record of substance use, the ALJ did not provide legally sufficient reason to reject Mackey's testimony. Finally, although the Commissioner also argues that Mackey made inconsistent statements about the frequency of his seizures, Def.'s Br. 8, Mackey's statements simply reflect a changing pattern of seizure onset over time. The Court can find no straightforward contradiction in Mackey's statements regarding the frequency of his seizures. On this record, therefore, the ALJ did not provide legally sufficient reasons for rejecting Mackey's credibility, and his finding should be reversed.

### III. Lay Witness Testimony

Mackey also argues that the ALJ improperly rejected the lay testimony of his wife, Tiffany Mackey. Pl.'s Br. 17. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511.

Ms. Mackey completed a Third Party Function report and stated that Mackey "cannot always keep up with a conversation and gets confused easily." Tr. 204. She wrote that Mackey had difficulty "doing things the way it is asked,' and that he had difficulty following directions.

13 – FINDINGS AND RECOMMENDATION

Tr. 205. She described Mackey's seizures as unpredictable and characterized by falling, jerking, hard breathing, and foaming at the mouth. Tr. 19. Ms. Mackey noted that Mackey's seizures have resulted in concussions, back problems, and severe arthritis in his left shoulder, and estimated that Mackey suffers about three seizures per month. *Id.*

The ALJ rejected Ms. Mackey's testimony because it was similar to Mackey's own testimony, and because he previously found Mackey to be not credible. *Molina*, 674 F.3d at 1122 (it is not reversible error to reject lay testimony when "the lay testimony described the same limitations as [claimant's] own testimony, and the ALJ's reasons for rejecting [claimant's] testimony apply with equal force to the lay testimony"). Because the ALJ improperly rejected Mackey's credibility, however, he similarly failed to provide legally sufficient reasons for rejecting Ms. Mackey's statements. The ALJ's evaluation of the lay witness testimony should therefore be reversed.

## IV. Step Two Findings

Mackey argues that the ALJ erred by failing to find his left shoulder impairment "severe" at step two. At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments; step two findings must be based upon medical evidence. 20 C.F.R. § 416.920(a). An impairment is "not severe" if it "does not significantly limit [the claimant's] ability to do basic work activities." *Id.* "Omissions at step two are harmless if the ALJ's subsequent evaluation considered the effect of the impairment omitted at step two." *Harrison v. Astrue*, 2011 WL 2619504, *7 (D. Or. July 1, 2011) (citing *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007)).

At step two, the ALJ found that Mackey's alleged back, neck, and left shoulder pain and limitations did not constitute a severe impairment. Tr. 17. To justify this finding, the ALJ stated

14 – FINDINGS AND RECOMMENDATION

that there was no evidence that Mackey's shoulder condition significantly limited his work activities, citing medical evidence of good muscle strength and tone, normal reflexes, and normal range of motion. Tr. 17, *citing* Tr. 583, 587, 603. Mackey's medical history, however, reveals a history of left shoulder problems. *See* Tr. 304, 457, 458, 483, 492, 571. For example, MRI testing revealed "severe post-traumatic deformity with joint effusion." *Id.* In June, 2010, agency physician Mary Ann Westfall, M.D., concluded that Mackey's ability to reach overhead was "limited" due to problems on his left side.[2] Tr. 73. Mackey also testified to musculoskeletal pain. While this evidence could be considered consistent with good muscle strength and tone and a normal range of motion, it was reasonable for the ALJ to conclude that Mackey's musculoskeletal problems were not severe, because it is reasonable to assume that the alleged shoulder problems would result in abnormal range of motion and poor muscle strength and tone in some areas. As noted, if the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes*, 881 F.2d at 750. The ALJ did not err at step two.

## V.  Remand

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence

---

[2] The Court notes, however, that when formulating Mackey's RFC the ALJ omitted Dr. Westfall's limitation on overhead reaching without explanation. *See* Tr. 18. It is legal error to ignore an examining physician's medical opinion without providing reasons for doing so, and an ALJ effectively rejects an opinion where he ignores it. *Smolen*, 80 F.3d at 1286. The ALJ's omission of Dr. Westfall's medical opinion was error.

15 – FINDINGS AND RECOMMENDATION

is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 348 (9th Cir. 1991) (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, the court finds no outstanding issues that must be resolved before a determination of disability can be made. The ALJ did not provide legally sufficient reasons for rejecting Dr. Schreiner's opinion that Mackey could not work due to his seizures. The ALJ also improperly rejected testimony from Mackey and his wife regarding Mackey's symptoms. When credited as true, the improperly rejected evidence justifies a finding of disability.

At the hearing, the VE testified that Mackey would probably not be able to sustain employment with absences of more than once a month. Tr. 59-60. Given the frequency of Mackey's seizures and necessary recovery time, Mackey would be required miss more than one day per month of work. *See* Tr. 40-41. The severity of Mackey's condition is underscored by

the opinion of treating physician Dr. Schreiner. Based on this evidence, the Court finds that there are no outstanding issues that must be resolved before a determination of disability can be made. This case should be reversed and remanded for the immediate payment of benefits.

## RECOMMENDATION

The ALJ improperly rejected medical evidence and testimony from Mackey and his wife. When credited as true, that testimony justifies a finding of disability; therefore, this case should be remanded for the immediate payment of benefits and judgment should be entered accordingly.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Recommendation. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

Dated this 16th day of June, 2014.

                                                Honorable Paul Papak
                                                United States Magistrate Judge